UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:20-cv-00317-RJC

| | |
|---|---|
| JACOB MICHAEL RIDDLE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | **ORDER** |
| COMMISSIONER OF SOCIAL SECURITY ) | |
| ) | |
| Defendant. ) | |
| ) | |
| ) | |

**THIS MATTER** comes before the Court on the Parties' Cross Motions for Summary Judgment. (Doc. Nos. 13, 14). Having fully considered the written arguments, administrative record, and applicable authority, the Court finds that Defendant's decision to deny Plaintiff Social Security benefits is supported by substantial evidence and will **AFFIRM** the decision. Accordingly, the Court will **DENY** Plaintiff's Motion for Summary Judgment and **GRANT** Defendant's Motion for Summary Judgment.

## I. BACKGROUND

Jacob Michael Riddle ("Riddle") filed this action seeking judicial review of the Commissioner of Social Security's ("Defendant" or "Commissioner") denial of his social security claim. Riddle filed an application for supplemental security income on July 28, 2017, alleging a disability onset date of the same day. (Tr.[1] 17).

In denying Riddle's social security claim, the Administrative Law Judge (the "ALJ") conducted a five-step sequential evaluation. (*Id.* at 19-28). At step one, the ALJ found that Riddle

---

[1] Citations to "Tr." throughout the order refer to the administrative record at Doc. No. 11.

had not engaged in substantial gainful activity since the application date. (*Id.* at 19). At step two, the ALJ found that Riddle had the following severe impairments: history of motor vehicle with right femur fracture and spleen, liver, kidney, and facial lacerations – status post multisite reconstructive surgeries; chronic pain syndrome; depression; post-traumatic stress disorder (PTSD); and history of alcohol and drug abuse. (*Id.*). At step three, the ALJ found that none of the impairments, or combinations of impairments, met or equaled the severity of a listed impairment. (*Id.* at 10-21). Before moving to step four, the ALJ found that Riddle had the residual functional capacity ("RFC") as follows:

> to perform light work as defined in 20 CFR 416.967(b) except he can push and pull occasionally with the right lower extremity; he can frequently balance, kneel, stoop, and crouch; he can never climb ropes, ladders, or scaffolds; he can never crawl; he should avoid concentrated exposure to hazards and vibrations; he is limited to simple, routine, repetitive work with only occasional public contact; and he is limited to SVP 1 and 2 jobs with SVP 1 and 2 reasoning.

(*Id.* at 26). At step four, the ALJ found that Riddle was unable to perform any past relevant work, and found at step five that he could perform jobs that existed in significant numbers in the national economy. (*Id.* at 27).

After exhausting his administrative remedies, Riddle brought the instant action for review of Defendant's decision denying his application for disability benefits. (Doc. No. 1).

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, *Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *see also Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (*per curiam*). The District

Court does not review a final decision of the Commissioner *de novo*. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

As the Social Security Act provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In *Smith v. Heckler*, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)), the Fourth Circuit defined "substantial evidence" as:

> Substantial evidence has been defined as being "more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*See also Seacrist v. Weinberger*, 538 F.2d 1054, 1056–57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence.").

The Fourth Circuit has long emphasized that it is not for a reviewing court to weigh the evidence again, nor to substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. *Hays v. Sullivan*, 907 F.2d at 1456 (4th Cir. 1990); *see also Smith v. Schweiker*, 795 F.2d at 345; *and Blalock v. Richardson*, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome—so long as there is "substantial evidence" in the record to support the final decision below. *Lester v. Schweiker*, 683 F.2d 838, 841 (4th Cir. 1982).

### III. DISCUSSION OF CLAIM

Riddle argues the ALJ erred by failing to include any non-exertional limitations due to his chronic pain syndrome and PTSD in his RFC, including his ability to maintain concentration, persistence, or pace ("CPP"). (Doc. No. 13). Defendant responds that the decision is supported

by substantial evidence. (Doc. No. 15).

"The determination of eligibility for social security benefits involves a five-step inquiry." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). "The five step inquiry asks whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a medical impairment (or combination of impairments) that are severe; (3) the claimant's medical impairment meets or exceeds the severity of [one of certain listed] impairments . . .; (4) the claimant can perform her past relevant work; and (5) the claimant can perform other specified types of work." *Id.* at 653 n.1; 20 C.F.R. § 404.1520. Before the fourth step, the ALJ determines the claimant's RFC, which is "the most [the claimant] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a). The ALJ is solely responsible for assessing a claimant's RFC. 20 C.F.R. § 404.1546(c). The ALJ first assesses the nature and extent of the claimant's physical and mental limitations and restrictions and then determines the claimant's RFC for work activity on a regular and continuing basis. 20 C.F.R. § 404.1545(b). The RFC should be assessed "based on all the relevant evidence in [the claimant's] case record" and considering all of the claimant's medically determinable impairments. 20 C.F.R. § 404.1545(a).

"[T]he ability to perform simple tasks differs from the ability to stay on task." *Mascio v. Colvin*, 780 F.3d 632, 638 (4th Cir. 2015). "Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." *Id.* However, there is not "a categorical rule that requires an ALJ to always include moderate limitations in concentration, persistence, or pace as a specific limitation in the RFC." *Shinaberry v. Saul*, 952 F.3d 113, 121 (4th Cir. 2020). An ALJ may explain why a limitation related to a claimant's CPP limitations is unnecessary, "[f]or example, the ALJ may find that the concentration, persistence, or pace limitation does not affect [the claimant's] ability to work, in which case it would [be] appropriate

to exclude it" from the RFC. *Id*. Thus, "[w]hen medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace, courts have concluded that limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations." *Id.* This inquiry is made on a case-by-case basis. *Shinaberry*, 952 F.3d at 122. So long as an ALJ's RFC assessment is supported by substantial evidence in the record, and other inadequacies in the ALJ's decision do not frustrate meaningful review, an ALJ met his *Mascio* duty. *Mascio*, 780 F.3d at 636 ("[R]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review."). Thus, remand for lack of discussion is appropriate only if the ALJ's opinion is "sorely lacking in a manner that frustrates meaningful review." *Hubbard v. Berryhill*, No. 3:17-CV-677, 2018 WL 3744017, at *6 (W.D.N.C. Aug. 7, 2018) (internal quotations omitted).

The ALJ concluded Riddle had a mild limitation in concentrating, persisting, or maintaining pace and completed a thorough analysis of Riddle's medical records, including those related to Riddle's pain and mental impairments. The ALJ discussed at length Riddle's medical evidence related to his chronic pain. He observed in July 2017, Riddle presented for medical refills but "did not endorse any significant pain or functional limitations." (Tr. 22). And in a February 2018 psychological examination, Riddle "referenced his history of injuries sustained in a motor vehicle accident, but offered it was 'mostly the mental thing.'" (*Id.* at 23). He noted over time Riddle sought to taper off pain medication for treatment of chronic pain and regularly did not appear in significant distress during visits. (*Id.* at 22-23). The ALJ observed Riddle was treated for depression, PTSD, and substance abuse. (*Id.*). He described medical evidence from October

2017, which indicate Riddle had "PTSD related to his prior accident" but was "cooperative and affable, gave adequate eye contact, and demonstrated well-developed insight and judgment. He was further noted to have memory and attention adequate for reciprocal conversation, no evidence of psychotic process, no hallucinations, and no suicidal ideations." (*Id.* at 24). The ALJ noted that as a result of a February 2018 psychological consultative examination, the examiner assessed Riddle "would have mild problems with attention and concentration, no difficulty with understanding or retaining instructions, and mild to moderate difficulty dealing with stress." (*Id.*). In March 2018, Riddle presented for therapy and "endorsed benefit from implementing skills for treatment of chronic pain and distress intolerance of family behaviors. His provider noted that due to his lack of distress, they ended his session early." (*Id.*). The ALJ analyzed Riddle's additional mental health records detailing his moods, sobriety, and relapses during 2018 and 2019. (*Id.* at 25).

When discussing medical opinions, the ALJ found Dr. Burgess unpersuasive because he failed to offer functional limitations in vocational terms and lacked specificity. (*Id.* at 26). Moreover, the ALJ observed that Dr. Burgess described Riddle's "mental health issues as significant" based largely on Riddle's subjective reports and for "which he is unqualified to determine." (*Id.*). The ALJ found Karen Marcus, a clinical psychologist, persuasive, who indicated Riddle "would have no problem understanding, retaining, and following directions." (*Id.*). After assessing the evidence, the ALJ explained:

> In sum regarding the claimant's mental impairments, the evidence shows improvement with therapy and largely conservative treatment. He did not require involuntary inpatient care nor did he demonstrate reduced cognition even during periods of substance abuse or symptom exacerbation. Exacerbations were typically in the context of situational stressors and the claimant showed good insight in those instances and maintained self-care. Thus, a reduction to simple, routine, and repetitive work with limited public contact should accommodate his limitations in mental functioning.

(*Id.* at 25). The ALJ concluded "there is no evidence to support that the claimant would have

absenteeism and off-task behavior that would lead to job termination of positions within the retained capacity." (*Id.* at 26).

Here, as described above, the ALJ acknowledged and considered Riddle's pain and PTSD, concluded he had mild difficulty persisting or maintaining pace, and then sufficiently explained why a limitation for simple, routine, and repetitive work accommodated Riddle's limitations in mental functioning, including CPP. Unlike in *Mascio*, the ALJ did not ignore, without explanation, Riddle's limitation in CPP when conducting the RFC analysis and the resulting hypothetical was proper. *Shinaberry*, 952 F.3d 113, 121 (4th Cir. 2020). Additionally, the ALJ "buil[t] an accurate and logical bridge from the evidence to his conclusion," which is supported by substantial evidence. *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016). Accordingly, the Court will affirm the Defendant's decision to deny Plaintiff social security benefits.

## IV. CONCLUSION

**IT IS, THEREFORE, ORDERED** that:

1. Plaintiff's Motion for Summary Judgment (Doc. No. 13) is **DENIED**;
2. Defendant's Motion for Summary Judgment (Doc. No. 14) is **GRANTED**; and
3. Defendant's decision to deny Plaintiff Social Security benefits is **AFFIRMED**.

The Clerk is directed to close this case.

**SO ORDERED**.

Signed: March 28, 2022

Robert J. Conrad, Jr.
United States District Judge